**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-545-WJM-KLM

A. SUSAN MARQUEZ,

      Plaintiff,

v.

MARTHA JOHNSON, Administrator General Services Administration Agency,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

      Plaintiff A. Susan Marquez brings this action against Defendant Martha Johnson,

Administrator of the General Services Administration ("GSA"), for employment

discrimination, unlawful retaliation, and violations of the Privacy Act.  Before the Court

are (1) Defendant's Motion for Summary Judgment (ECF No. 39), and (2) Plaintiff's

Motion for Partial Summary Judgment (ECF No. 41).  For the reasons set forth below,

Defendant's Motion for Summary Judgment is granted, which moots the need to

consider Plaintiff's Motion for Partial Summary Judgment.

## I.  BACKGROUND

      On March 2, 2012, Defendant filed her Motion for Summary Judgment (ECF No.

39) which sets forth its Statement of Facts as required by the Court's Practice

Standards.  *See* WJM Revised Practice Standards III.E.5.  On March 29, 2012, Plaintiff

filed her Amended Response to Defendant's Motion.  (ECF No. 47.)  Plaintiff's

Response, however, failed to admit or deny, in correspondingly numbered paragraphs,

any facts set forth in Defendant's Statement of Material Facts section, as required by the Court's Practice Standards.  (*Id.* at 2-4.)

Local Rule 7.1(D) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." DCColoLCivR 7.1(D).  Further, "[g]eneral references to cases, pleadings, depositions, or documents are insufficient if the document is over one page in length.  The parties shall provide specific references in the form of precise citations, page number or paragraph number to identify those portions of the cases, pleadings, depositions, or documents relevant to the argument presented.  Failure to follow these citation requirements will result in the striking of the offending documents and/or such other sanction this court deems appropriate under the circumstances."  WJM Revised Practice Standards II.F.2.

Instead of following this Court's Practice Standards, Plaintiff refutes Defendants' "Undisputed Facts" section by relying, almost exclusively, on her affidavit which contains inadmissible hearsay statements, and statements made without a factual basis.  *See* Fed. R. Civ. P. Rule 56(e); *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir.1996); *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007).  Plaintiff's "Undisputed Facts" section contains practically no citations to the record, and only refers, without specific references, to Plaintiff's affidavit.  (ECF No. 47 at 2-4.)  It has long been established that this Court is not required to parse the record for facts favorable to the Plaintiff, and should "consider[] only the evidence specifically cited by Plaintiff."  *Cartinelle v. Napolitano*, 08-cv-2223, 2011 WL 2610189, at *5 (D. Colo. July 1, 2011); *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) ("[O]n a

-2-

motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record.").

Because Plaintiff failed to admit or deny Defendant's material facts, and otherwise failed to follow local, federal, or the Court's rules as described above, Defendant's Statement of Material Facts section is deemed admitted. *See Rose v. City of Lafayette*, Colo. 05-cv-00311, 2007 WL 485228, at *1 (D. Colo. Feb. 12, 2007) (where Plaintiff "did not provide a response to the Defendants' statements of undisputed facts," the court "accept[ed] the facts as set forth in the Defendants' briefs as undisputed, except to the extent that [the court] can determine the existence of a genuine dispute raised in the response brief.").

**A.     Factual Background**

Based on the above analysis, the following facts are taken from the record and are deemed admitted:

Plaintiff is currently employed as a Program Analyst, GS-0343-12, by the GSA's Federal Acquisition Service ("FAS").  (Am. Compl. (ECF No. 26) ¶ 2.)  GSA supplies products and communications for U.S. government offices, provides transportation and office space to federal employees, and develops government-wide cost-minimizing policies, and other management tasks.  (*Id*. at ¶ 3.)  FAS is one of two Services within GSA, and is responsible for a variety of functions in support of government functions, including procurement of products and services, management of a motor vehicle fleet, and disposal of personal property.  (*Id*. at ¶ 4.)

Presently, all GSA employees in Denver, Colorado currently work in the FAS's Region 8.  (*Id*. at ¶ 6.)  Prior to April 2010, however, certain employees in the Denver, Colorado office worked as employees of  FAS's Region 7.  (*Id*. at ¶ 7.)  On August 11, 2009, GSA announced a realignment of the its operations, including moving Region 7's employees located in the Denver, Colorado office into Region 8's operations in order to improve customer service.  (*Id*. at ¶¶ 8-9.)  The realignment included reassignment of Region 7 employee duties and integration of Region 7 employees into Region 8's business operations and structure.  (*Id*. at ¶ 10.)  Both Plaintiff's and her previous supervisor, H. Jan Faulkner's, positions were moved into Region 8 as a result of the realignment.  (*Id*. at ¶ 12.)

Although Plaintiff currently works in the Personal Property Management Division in Region 8, prior to the realignment, Plaintiff's position was part of Region 7.  (*Id*. at ¶ 13.)  Faulkner, who began working for GSA on April 14, 2008 as Region 7's Deputy Director for the FSA's Personal Property Management Division, was responsible for the direct day-to-day management of the Region 7 employees in Denver, Colorado.  (ECF No. 39, Ex. B, Brown Dep. 63:18-25.)  After the realignment, Faulkner's position was moved to Region 8.  (Horne Decl. ¶ 14.)

Alberta Brown, Faulkner's supervisor and Plaintiff's second line supervisor, was the Director for the FSA's Person Property Management Division in Region 7.  (*Id*. at ¶ 15.)  After the realignment, Brown continued to report to Region 7.  (*Id*. at ¶ 17.)  Prior to Faulkner's hire, Plaintiff directly reported to Brown.  (ECF No. 39, Ex. C, Resp. to Def.'s Request for Admission No. 7.)

From April 2008 through March 2009, Plaintiff reported to Faulkner.  (*Id*., No. 5.)
When Faulkner was hired, Plaintiff testified that Faulkner made "comments that she has
fired at will and she was not afraid to fire" and "mentioned firing federal employees at
will."  (Pl.'s Dep. 39:1-4; 40:21-25.)

Plaintiff contends that Faulkner's hostile work environment behavior began in
October 2008.  (*Id*., 36:7-12.)  Faulkner would stop by Plaintiff's work station and
discuss the work performance and mental issues of other employees.  (*Id*. at 36:16-25;
37:1-20; 38:12-14.)  Plaintiff testified that these discussions "contributed to a hostile
work environment based on race."  (*Id*. at 37:7-9.)  Faulkner never spoke to Plaintiff
about "anything in [Plaintiff's] life" during these discussions.  (*Id*. at 38:19-22.)

In February 2009, Faulkner "talked to the group about returning government
vehicles because the employees were not utilizing" them and using "short-term" rentals
instead.  (*Id*. at 46:15-18.)  Plaintiff went to Brown to complain about this decision.  (*Id*.
at 48:6-9, 14-16.)  Plaintiff then asked Brown if she could "move back under [Brown's]
supervision" because she had "a great relationship" with Brown.  (*Id*. at 58:5-11.)

On April 1, 2009, Plaintiff was moved back under Brown's supervision and
continued reporting directly to Brown until September 1, 2009.  (*Id*. at 58:13-25;
60:1-4;66:15-23; Pl.'s Resp. to Request for Admission No. 6.)  On May 14, 2009,
Faulkner gave Plaintiff her mid-year performance evaluation because Plaintiff was
under her supervision for over 120 days. (Pl.'s Dep. 60:10-24.)  Faulkner gave Plaintiff
an acceptable performance review.  (*Id*.)  Faulkner told Plaintiff that she tended to be
"an activist" and that Plaintiff "need[ed] to watch what [she] said because it could come

back to [her] in a negative way."  (*Id*. at 61:13-19.)

In July 2009, Faulkner informed Plaintiff that "[Faulkner did] not want [Plaintiff] attending any of [Faulkner's] meetings" because the meetings only concerned "information regarding personal property and not budget information."  (*Id*. at 78:8-12.) Plaintiff was only required to attend meetings when the budget was discussed.  (ECF No. 39, Ex. E, Faulkner Dep. 72:16-25; 73:1-4.)  Faulkner also moved responsibility of government purchase charges for the Denver office solely to employee Greg Schwartz. (ECF No. 39, Faulkner Decl. Ex. A.)  Faulkner made the decision to reassign timekeeping responsibilities to Plaintiff.  (*Id*.)  Plaintiff disagreed with both of Faulkner's decisions.  (Pl.'s Dep. at 78:16-19.)

In August 2009, Plaintiff learned that her position in GSA Region 7 was going to be moved to GSA Region 8 in the upcoming agency realignment.  (*Id*. at 69:14-22.) After the realignment was announced, Brown suggested that Plaintiff meet with Tim Horne, the Regional Commissioner for GSA Region 7, to discuss her skill set because she was concerned about moving back under Faulkner's supervision.  (*Id*. at 70:5-7; 71:17-19.)

Plaintiff made an appointment with Horne through Victoria Deal, who served as the Deputy Regional Commissioner.  (*Id*. at 71:21-24.)  At their meeting, Horne informed Plaintiff that Faulkner told Horne that Plaintiff was "disruptive to the organization."  (*Id*. at 75:18-20.)  Horne said "I really don't know Jan and I don't know you and I really feel like it is a personality conflict."  (*Id*. at 76:15-17.)  Horne also informed Plaintiff that Plaintiff's function would be different after the realignment and

that she would no longer be working for Faulkner.  (Horne Decl. ¶ 20.)  Plaintiff was moved back under Faulkner's supervision in September 2009.  (Pl.'s Dep. at 80:5-7.)

On October 28, 2009, Plaintiff met with an EEO Counselor.  (Faulkner Decl. Ex. B.)  On December 31, 2009, Plaintiff filed a formal complaint of discrimination based on the above treatment by Faulkner.  (*Id*.)

On January 5, 2010, Faulkner and GSA employee Penny Grout asked Plaintiff if she was interested in a detail (a temporary assignment) to the GSA Region 8's finance group.  (Pl.'s Dep. at 82:13-16.)  Plaintiff did not want to go on the detail, but was nevertheless assigned to the detail.  (*Id*. at 72:6-8; 83:2-4.)  On January 18, 2010, Plaintiff began her detail under Grout's supervision.  (*Id*. at 87:25; 88:1.)  Plaintiff worked with Grout through the end of May 2010.  (*Id*. at 93:2-9.)  In the detail, Plaintiff continued her previous duties while adding some new duties.  (*Id*. at 88:8-21.)

In 2009, the proposed budget for FAS Region 7's Personal Property Management division contained a "projection" for a new GS-13 budget analyst position.  (Pl.'s Dep. 83:13-21; Brown Dep. 14:18-25;15:1.)  In 2010, Faulkner changed the projected budget and decided not to post the GS-13 budget analyst position.  (Faulkner Dep. 36:1-20.)

Sometime in 2009 or 2010, Plaintiff was a witness in an EEO investigation involving another GSA employee, Jaime Hernandez.  (*Id*. at 99:3-7.)  Plaintiff ultimately did not provide any testimony in Hernandez's EEO proceeding.  (*Id*. at 99:8-9.)  Faulkner was not aware that Plaintiff was a witness in Hernandez's EEO proceeding until April 2010.  (Faulkner Decl. ¶ 5.)

In May 2010, Victoria Deal became Plaintiff's supervisor.  (Pl.'s. Dep. at 92:6-18; 93:5-9.)  Plaintiff's job duties under Deal were similar to her duties while working under Grout, and Deal also gave Plaintiff new job duties.  (*Id*. at 97:1-19.)  Deal told Plaintiff that she was "aware of [Plaintiff's] situation with Ms. Faulkner," and stated although she was friends with Faulkner, she was "not taking sides."  (*Id*. at 102:12-14.)

Plaintiff felt harassed because Faulkner would visit Ms. Deal on a routine basis.  (*Id*. at 94:5-24.)  Plaintiff continued to work with Deal until December 2010, when she requested to be detailed to GSA's Network Services Division.  (*Id*. at 103:16-24.)  On June 17, 2010, Plaintiff initiated EEO counseling for a second time.  (Faulkner Decl. Ex. C.)  On August 5, 2010, Plaintiff filed a second EEO complaint, which asserted reprisal and discrimination claims based on Plaintiff's treatment while working for Grout and Deal.  (*Id*. at 18-22.)

On or about January 2011, Faulkner hired Brett Gist, an Caucasian male, as a GSA collections officer, a GS-9 position, which has the potential for promotion to GS-12.  (Faulkner Dep. 24:21-25; 25:1-4; Pl.'s Dep. 11:1-18.)  Gist is a 30 percent disabled veteran.  (Faulkner Dep. 23:13-25; 24:1-5.)

In August 2008, Faulkner discussed another employee's EEO complaint.  (Am. Compl. ¶ 11; Ex. H, Pl.'s Resp. to Interrogatory No. 16.)  On January 18, 2010, Faulkner discussed Plaintiff's medical leave with her staff and mentioned that Plaintiff had a "cancer scare."  (Pl.'s Resp. to Interrogatory No. 16.)  On September 1, 2010 and December 16, 2010, Faulkner informed GSA employee Pat Honley that Plaintiff's and Jaime Hernandez's EEO cases were dismissed by the agency.  (*Id*.)  Faulkner also

approached Honley regarding the affidavit Honley provided during Plaintiff's EEO administrative proceeding.  (*Id.*)

**B.    Procedural History**

Plaintiff's Amended Complaint was filed on August 8, 2011.  (ECF No. 26.) Plaintiff brings claims of employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII), against Defendant based on the circumstances described above.  (*Id.*)  Plaintiff also brings claims under the Privacy Act, 5 U.S.C. §§ 552 *et seq.*  (*Id.*)

On March 2, 2012, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on all of Plaintiff's claims.  (ECF No. 39.)  On March 31, 2012, Plaintiff filed her Amended Response to Defendant's Motion for Summary Judgment.  (ECF No. 47.)  Defendant filed its Reply in Support of its Motion for Summary Judgment on April 16, 2012.  (ECF No. 55.)

On March 5, 2012, Plaintiff filed a Motion for Partial Summary Judgment on her retaliatory "non-promotion" claim.  (ECF No. 41.)  On March 29, 2012, Defendant filed its Response to Plaintiff's Motion for Partial Summary Judgment.  (ECF No. 44.) Plaintiff did not file a Reply brief.

These Motions are now ripe for resolution.

## II.  LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Where the non-movant bears the burden of proof at trial, the non-movant must then point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).

### III.  ANALYSIS

**A.  Defendant's Motion for Summary Judgment**

**1.  Title VII claims**

i.  <u>Plaintiff's "Compelled to Detail" and Promotion claims</u>

Defendant moves for summary judgment on Plaintiff's claims that she was "compelled to [a] detail" that she did not want, and was denied a promotion to a GS-13 position in violation of Title VII.  Defendant argues that it is entitled to judgment as a matter of law on these claims because Plaintiff failed to exhaust her administrative remedies before bringing suit.  (ECF No. 39 at 19-21.)

Title VII prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ."  42 U.S.C. § 2000e-2(a)(1)(1982).   Before bringing suit under Title VII in federal court, a federal employee must present a discrimination claim to the Equal Employment Opportunity Commission ("EEOC").  *See* 42 U.S.C. § 2000e-16(c); *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  Moreover, under Title VII, a plaintiff must exhaust administrative remedies for each discrete incident of discriminatory or unlawful treatment before seeking judicial relief.  *See Martinez v. Potter*, 347 F.3d 1209, 1210 (10th Cir. 2003).

Also under Title VII, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. §

1614.105(a)(1).  This enables the EEOC to investigate a plaintiff's claims.  *See Seymore v. Shawyer & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997).  As such, a plaintiff must contact an EEO Counselor within 45 days of each discrete retaliatory action because each "retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  *Baltazar v. Shinseki*, 10-cv-308, 2011 WL 2607154, at *4 (D. Colo. July 1, 2011) (citing *Martinez*, 347 F.3d at 1210.)

Here, Plaintiff claims that she was both "compelled [to a] detail" that she did not want, and was not promoted to a GS-13 position, in January 2010.[1]  (Pl.'s Dep. 120:11-15; 121:11-24.)  However, it is undisputed that Plaintiff only met with EEOC counselors on October 28, 2009, and June 17, 2010.  (Faulkner Decl., Exs. B, C.)  Neither of these dates falls within the 45-day window mandated by Title VII.[2]  Accordingly, Plaintiff's "compelled to detail" and promotion retaliation claims were not properly exhausted, and Defendant is entitled to summary judgment on these claims.  *See Mayberry v. E.P.A.*, 266 F. App'x 907, 912 (10th Cir. 2010) ("Federal employees failed to administratively exhaust their failure-to-promote claims under Title VII or the Age Discrimination in Employment Act (ADEA), where employees conceded that they did not meet with federal agency employer's Equal Employment Opportunity counselor as required for Title VII claims.").

---

[1]     Plaintiff alleges that her "complaint of retaliatory nonpromotion" occurred in July 2010.  (ECF No. 45 at 8.)  However, Plaintiff provides no citations to the record for her assertion.

[2]     Plaintiff has provided no evidence to support any tolling the 45-day EEO counseling deadline.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (citations and internal quotations omitted) ("equitable tolling of Title VII periods of limitation only if circumstances rise to the level of active deception which might invoke the powers of equity to toll the limitations period.").

ii.  <u>Hostile Work Environment Claims</u>

Defendant also moves for summary judgment on Plaintiff's claims that she was subject to an hostile work environment in violation of Title VII.  Defendant argues that it is entitled to judgment as a matter of law on these claims because Plaintiff has not put forth sufficient evidence to show that she was subject to a hostile work environment. (ECF No. 39 at 21-27.)

To succeed on a Title VII hostile work environment claim, a plaintiff must show that the complained of conduct: (1) is objectively severe or pervasive, that is, the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of plaintiff's sex, race, or another characteristic protected by Title VII.  42 U.S.C.A. § 2000e-2(a)(1); *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 668 (10th Cir. 2004) (citations omitted).

A Title VII plaintiff must also "present evidence that supervisory or management personnel either (1) orchestrated the harassment of the plaintiff by other employees or (2) knew about the harassment and acquiesced in such a manner as to condone it."  *Id*. (citing *Gunnel v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998)).

When bringing an action under Title VII based on racial discrimination, a plaintiff must come forward with evidence from which a rational jury could find that the plaintiff "was the object of harassment because of" his or her race.  *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

After reviewing Defendant's argument and evidence, the Court finds that
Defendant has met its initial burden of showing an absence of evidence to support
Plaintiff's hostile work environment claims.  *See Celotex*, 477 U.S. at 325.  Specifically,
Defendant submitted evidence demonstrating Ms. Faulkner's behavior did not rise to
the level of a hostile work environment.  Ms. Faulkner only discussed work related
matters with Plaintiff, and Plaintiff testified that she "wasn't saying I was going to file an
EEO because I have, you know, some grounds to . . . I just thought it was
unprofessional."  (Pl.'s Dep.  38:19-22, 41:18-24.)  Plaintiff and Faulkner also disagreed
on a number of business judgments, including Faulkner's decision to take away the
government vehicles of the agency's Area Property Officers.  (*Id*. at 46:15-20.)
However, there is no evidence whatsoever showing that Faulkner's actions created a
hostile work environment motivated by Plaintiff's race and/or EEO activity.  In short, no
evidence has been submitted showing that Plaintiff's work environment was "so heavily
polluted with discrimination as to destroy the emotional and psychological stability of the
minority [employee.]" *Javed v. Anheuser-Busch Inc*., 90-1372, 931 F.2d 62 (table),
1991 WL 65069, at *2 (10th Cir. Apr. 24, 1991) (internal citations and quotations
omitted).

In contrast, Plaintiff's attempt to establish a *prima facie* case of racial
discrimination leading to a hostile work environment is woefully insufficient.  As noted
above, all of Plaintiff's "facts" are stated with almost no citation to supporting evidence
in the record.  (Response at 2-4.)  Indeed, virtually every paragraph in Plaintiff's
Response contains factual allegations, but few, if any, record citations.  (Response at 6-
19.)  Moreover, other than citing cases that set forth general legal standards, Plaintiff

-14-

offers slim legal authority to support her claims.  And while Plaintiff alleges racial discrimination, her support of such allegations is conclusory at best.  For example, Plaintiff states that Faulkner made "derogatory" comments about Hispanics, and made "racial stereotype" comments.  (Pl's. Decl. ¶¶ 14, 15, 21, 41.)  But Plaintiff does not state how such "derogatory" comments related to her race, nor does she describe the "racial sterotype" comments.  In short, Plaintiff has failed to point to any evidence in the record which supports her contentions that the hostile work environment to which she was allegedly subjected was "because of" her race or national origin.

"[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).  Plaintiff's Response has failed to meet this burden.  Accordingly, the Court finds that there is no genuine dispute of fact that prevents Defendant from being entitled to judgment as a matter of law on Plaintiff's hostile work environment claims.  As such, Defendant's Motion for Summary Judgment on these claims is granted.

### iii.  Retaliation Claims

Defendant next moves for summary judgment on Plaintiff's claims that Defendant retaliated against her in violation of Title VII.  Defendant argues that it is entitled to judgment as a matter of law on these claims because Plaintiff has not put forth sufficient evidence to show that she was retaliated against for engaging in protected activity.  (ECF No. 39 at 27-31.)

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that she engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the materially adverse action. *Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1119 (10th Cir. 2005). "The fact finder must be able to conclude 'discrimination was a determinative factor in the employer's actions.'" *Piercy v. Maketa*, 480 F.3d 1192, 1201 (10th Cir. 2007) (citation omitted). Discrimination or retaliation can only be a "determinative factor" in an employer's actions if the actions would not have occurred "but for" the discrimination or retaliation. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotation omitted).

Plaintiff first alleges that she was retaliated against by Defendant because Plaintiff was listed as a witness in Jaime Hernandez's EEO proceeding. The Court finds that Defendant has met its initial burden of showing an absence of evidence to support Plaintiff's retaliation for being a witness claim. *See Celotex*, 477 U.S. at 325. It is undisputed that Faulkner had a number of legitimate reasons for any work related decisions described above. (Faulkner Dep. 24:21-25:4, 36:1-20, 72:16-73:4; Pl.'s Dep. 11:1-18, 46:15-18, 78:8-12; Faulkner Decl. ¶ 10, Exs. B, C.) For example, Faulkner's decision to have Plaintiff attend fewer meetings was based on Plaintiff's job description, and Faulkner offered legitimate reasons for moving procurement functions. (*Id.*)

Moreover, Plaintiff's first retaliation claim pertains to her 2009 EEO complaint. (Am. Compl. ¶¶ 5-10.) However, Faulkner "was not aware Ms. Marquez was involved as a witness to Mr. Hernandez's EEO complaint" until April 2010. (Faulkner Decl. ¶ 10.)

"[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII [or ADEA]." *Peterson v. Utah. Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

Plaintiff has failed to refute the material facts put forth by Defendant.  Indeed, Plaintiff's retaliation response section to Defendant's Motion only cites to two pieces of evidence: (1) proof that Plaintiff had a doctor's appointment scheduled in January 2010, and (2) evidence that Patricia Honley feared retaliation from Faulkner.  (ECF No. 47 at 9-12.)  Plaintiff also argues that Faulkner's entire deposition testimony should be disregarded because could not "recall" facts regarding one issue.  (*Id.* at 14-16.)  Such evidence does not create a genuine dispute of a material fact with regard to the question of whether Faulkner was aware of Plaintiff's alleged participation in protected activity.

For the foregoing reasons, Plaintiff's retaliation claim based on her being a witness in the Hernandez EEO proceeding cannot survive summary judgment.  *See Lamber v. Travel Ctr. of Am.*, 09-cv-120, 2009 WL 3838780, at *10 (D. Colo. Nov. 16, 2009) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668-69 (7th Cir. 2006))("proof of retaliation . . . presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them") (quotations and citations omitted)).

Plaintiff's second relation claim alleges that Ms. Faulkner attempted to influence Ms. Deal's treatment of Plaintiff.  (Am. Compl. ¶¶ 5-10.)  However, the undisputed

evidence in the record does not support Plaintiff's allegation.  Rather, Plaintiff testified

that Ms. Deal said "she is not getting involved" and she was "not taking sides."  (Pl.'s

Dep. 94:8-9; 102:9- 14.)  Plaintiff also stated that Ms. Deal never harassed Plaintiff

based on her protected EEO activity.  (Id. at 103:9-11.)  Plaintiff's job duties were not

diminished while working for Ms. Deal.  (*Id*. at 96:20-25; 97:1-23.)  Further, Deal's

management of Plaintiff's job duties was based on her own business judgments and

assessment of the agency's needs.  (Deal Decl. ¶¶ 10-29, 35-38.)  Plaintiff has failed to

adequately refute these facts.

Based upon the law and the undisputed evidence described above, Defendant is

entitled to summary judgment on Plaintiff's retaliation claims based upon Ms. Deal's

treatment of Plaintiff.

### 2.    Privacy Act claims

Defendant moves for summary judgment on Plaintiff's claims that Ms. Faulkner

disclosed private and protected information about Plaintiff to co-workers in violation of

the federal Privacy Act.  Defendant argues that it is entitled to judgment as a matter of

law on these claims because: (1) each of the documents or pieces of information upon

which Plaintiff bases her Privacy Act claims was retrieved from a system of records and

was not "disclosed" within the meaning of the Privacy Act; and (2) any alleged

disclosures at issue were not made in an intentional or willful manner.  (ECF No. 39 at

31-36.)

To prevail on a claim for improper disclosure under the Privacy Act, a plaintiff

must prove: "(1) the information is a record within a system of records, (2) the agency

disclosed the information, (3) the disclosure adversely affected the plaintiff, and (4) the

disclosure was willful or intentional." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010) (citation omitted). "Disclosure" under the Privacy Act means "providing personal review of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative." *Pippinger v. Rubin*, 129 F.3d 519, 528 (10th Cir. 1997) (quoting 5 C.F.R. § 297.102). A "disclosure" also requires that the record actually be transmitted to an individual. 5 U.S.C. § 552a(b). Moreover, the information conveyed must not have been known to the recipient of the information. *See Kline v. Dep't of Health & Human Servs.*, 927 F.2d 522, 524 (10th Cir. 1991) ("[a] later release of information previously known does not violate the Privacy Act.")

Only "records" retrieved from "systems of records" are subject to the Privacy Act. A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). Thus, to be covered by the Privacy Act, a record must actually be retrieved from a system of records by using a personal identifier. *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1460-61 (D.C. Cir. 1996) (retrieval capability is not sufficient to create a system of records; to be in a system of records, a record must in practice be retrieved by an individual's name or other personal identifier).

The Privacy Act exempts "routine uses," *i.e.*, types of disclosures that are published by an agency in the Federal Register and compatible with the purposes for which the information is gathered. 5 U.S.C. § 552a(b)(3) (setting forth routine use exception); 5 U.S.C. § 552a(a)(7) (defining "routine use"). For GSA agencies, routine

uses includes any "civil, or administrative legal proceeding, where pertinent, to which GSA, a GSA employee, or the United States or other entity of the United States Government is a party before a court or administrative body" and in "an appeal, grievance, hearing, or complaints examiner; an equal employment opportunity investigator, arbitrator, or mediator; and/or an exclusive representative or other person authorized to investigate or settle a grievance, complaint, or appeal filed by an individual who is the subject of the record."  76 Fed. Reg. 44332-01 (July 25, 2011).

A plaintiff also must do more than establish that the Privacy Act has been violated to recover damages in a civil action.  5 U.S.C. § 552a(g)(1).  A plaintiff must establish an adverse effect, 5 U.S.C. § 552a(g)(1)(D), and that the "agency acted in a way which was intentional or willful."  5 U.S.C. § 552a(g)(4).  To be an "intentional or willful" act, it must be "action so patently egregious or unlawful that anyone undertaking the conduct should have known it unlawful, or conduct committed without grounds for believing it lawful or action flagrantly disregarding others' rights under the Act." *Pippinger*, 129 F.3d at 530 (citation omitted).

As above, after reviewing Defendant's argument and evidence, the Court finds that Defendant has met its initial burden of showing an absence of evidence to support Plaintiff's Privacy Act claims.  *See Celotex*, 477 U.S. at 325.  Specifically, Faulkner's disclosure to her staff that Plaintiff was out on leave, possibly due to a "cancer scare", was based on their "need for the information in the performance of their duties."  5 C.F.R. § 297.401(a); (Faulkner Decl. ¶¶ 7-15.)  Plaintiff cited no evidence, competent or otherwise, which contradicts this assertion.

Further, it is undisputed that Faulkner's statement that the EEO complaints against her were dismissed was based on her own personal knowledge, and not on any information retrieved from a system of records.  (Honley Dep. 17:8-15; Faulkner Dep. 49:8-17; Faulkner Decl., Exs. B, C.)  Such information "derived from independent knowledge and not from an agency system of records" does not violate the Privacy Act. *Kline v. Dep't of Health and Human Svs.*, 927 F.2d 522, 525 (10th Cir. 1991) (citation omitted).  Moreover, Patricia Honley, the individual to whom Plaintiff alleges her private EEO records were disclosed, testified that "Ms. Faulkner did not divulge any of the actual facts concerning the EEO proceedings" and only mentioned that the "EEO complaints had been terminated."[3]  (Honley Dep. 17:13-8-21.)  Plaintiff has again failed to adequately refute these facts.

Under these circumstances described above, Plaintiff cannot establish that these disclosures violated the Privacy Act, and Defendant is entitled to judgment as a matter of law on these claims.

**B.    Plaintiff's Motion for Partial Summary Judgment**

On March 5, 2012, Plaintiff filed a Motion for Partial Summary Judgment on her retaliatory "non-promotion" claim.  (ECF no. 41.)  Because Defendant's Motion for Summary Judgment is granted as described above, Plaintiff's Motion for Partial Summary Judgment is denied as moot.

---

[3]    While Honley testified that Faulkner told her that she had read Honley's EEO Affidavit, Plaintiff submitted no evidence showing that Faulkner divulged facts concerning the EEO proceedings.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED;

2.       Plaintiff's Motion for Partial Summary Judgment (ECF No. 41) is DENIED as MOOT;

3.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant on all claims; and

4.      Each party shall bear her own attorney's fees and costs.


Dated this 19th day of December, 2012.

BY THE COURT:

_____

William J. Martínez
United States District Judge